JOVI G. USUDE (SBN: 212895)
LAW OFFICE OF JOVI G. USUDE APC
14833 VICTORY BLVD.
VAN NUYS, CA 91411
TELEPHONE:(818) 988-9111
FACSIMILE: (818) 988-9118
Attorneys for The Federal Government of Nigeria

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,, <br><br>PLAINTIFFS, <br><br>v. <br><br>ARA GARABED DOLORIAN <br><br>DEFENDANTS, | CASE NO.: 1:15-CV-00954-DAD-EPG <br><br> PETITION OF THE FEDERAL REPUBLIC OF NIGERIA FOR ANCILLARY HEARING TO MODIFY PRELIMINARY ORDER OF FORFEITURE |

Federal Republic of Nigeria (hereinafter "Petitioner"), by and through its counsel Jovi G. Usude , petitions this Court for an ancillary hearing to modify this Court's January 29, 2020 Preliminary Order of Forfeiture. (the "Preliminary Order"), 21 U.S.C. §853(n), and Fed. R. Crim. P. 32.2(c)(the "Petition"). Petitioner asserts its interest as an innocent third party with respect to ;

    a)    Approximately $3,801, 034.94 seized from Citibank Account Number 206054579, held in the name of Arthur Ave. Consulting , Inc.;

    b)    Approximately $21, 865.67 seized from Citibank Account number 205912785, held in the name of Arthur Ave., Consulting Inc.;

c) Approximately $2,031,022.25 seized from bank of America Account Number 325016557962, held in the name of Martel 3D, LLC;

d) Approximately $120,883.59 seized from Bank of America Account Number 000571161654 held in the name of Martel 3D, LLC, and

e) Approximately $50,000.00 seized from California Franchise Tax Board, sourced from funds withdrawn from Bank of America Savings Account Number 325016557963 held in the name of Martel 3D, LLC, (the "Funds"), which is identified in the Preliminary Order and has been forfeited to the United States, in the above-entitled case.

Petitioner is the bona fide owner of those funds and a victim of misrepresentation and or fraud by defendant in the above entitled case. Petitioner being the bona fide owner of the fund held in those accounts has an interest in the ownership of those funds which is superior to the Defendant's interest or the government's interest in the Funds. In support of this Petition and its claim, Petitioner states as follows:

1. On or about January 29, 2020, this Court entered the Preliminary Order, which states that "Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), defendant Ara Garabed Dolorian's interest in the Funds listed in Exhibit A attached hereto shall be condemned and forfeited to the United States of America, to be disposed of according to law."

2. The Preliminary Order identifies the Funds as subject to forfeiture. *See* of Exhibit A.

3. Pursuant to 21 U.S.C. §853(n), Petitioner has a recognizable legal interest in the Funds, which renders the Preliminary Order invalid in whole or in part, because the interest in the Funds is vested in the Petitioner rather than Defendant, and Petitioner's interest in the Funds is superior to any right, title, or interest of Defendant or the United States of America.

4. Petitioner's claim arises out of the following:

1. On or about May 18, 2014, Petitioner The Federal Republic of Nigeria herein after referred to as " The FRN" by and through its agent the Nigerian national Security Advisor's Office wired two payments in the sum of ($9,999,999,) , for a

total sum of ($10,999,980) to Sk-Sawki Limited Hong Kong Furniture, Souleymane and Kabirou for the procurement of technical equipment.

2. It has been established through database that SK-SAWKI was established in Hong Kong by two citizens of Niger identified as Kabirou Abdoulkadri and Souleymane Sido. It has been confirmed that these two men reside in China. It has also been established that SK-SAWKI is registered as a furniture company in Hong Kong.

3. The NIGERIAN NATIONAL SECURITY ADVISOR'S OFFICE (NSAO), is an entity of the Nigerian Government and "Petitioner THE FEDERAL REPUBLIC OF NIGERIA- THE FRN" under the office of the President, and is located in the Three Arms Zone of Abuja, Nigeria.

4. The (NSAO) was given about $1 billion by the Nigerian Government in 2014, for the purchase of military equipment for the country.

5. Specifically, in or around September 2014,("DOLORIAN CAPITAL INC. - hereinafter ("DCI"), negotiated with arms vendors and made payments to arms merchants for the acquisition of weapons intended to be transferred to Nigeria, and "DCI" received funds of about $8,618,647.00 in wire transfer through "PETITIONER THE FRN's" agents - intermediaries for the payment of the weapons contracted between June and September 2014, intended for Nigeria.

6. The "PETITIONER THE FRN" later discovered that the funds paid to "DCI" were not held in an escrow account but were used to pay a "DCI" agent in the Czech Republic and for other expenses, and were transferred to various bank accounts controlled by "DCI."

7. Unknown to the "PETITIONER THE FRN," the "DCI" did not have a license to engage in the sale and export, import and brokering of military products in violation of 22 U.S.C. § 2778, et seq.

8. At the time the "PETITIONER THE FRN" made the payment for the purchase of the weapons the "PETITIONER THE FRN" had no knowledge of "DCI's" violation of various laws pertaining to Laws of the United States concerning the

sales of military weapons to a foreign government.

9. At the time the "PETITIONER THE FRN" entered into the sales contract for the purchase of the weapons the "DCI" and its agents failed to disclose to "PETITIONER THE FRN" that "DCI" did not have any license to engage in the sale and export of military products.

10. The "PETITIONER THE FRN" seeks to recover all its funds and is a victim of fraudulent practice by "DCI" and its agents who misrepresented its status as a licensed and legitimate broker of military weapons at the time the parties entered into the contract for the purchase of the weapons for the Nigerian Government.

11. Particularly, on or around June 17, 2014, SK-SAWKI wired from a Hong Kong Bank Account the sum of $4,998,647 to a JP Morgan Bank Account that was opened by Mr. Myron Smith in Fresno California.

12. On or around September 11, 2014, "SOCIETE D'EQUIPMENTS INTERNATIONAUX (in Abuja, Nigeria) - by and through Mr. HIMA ABOUBAKAR (a Niger Citizen) wired the sum of about $3.6 million to Mr. MYRON SMITH (Attorney in Fresno California) for the purchase of military weapons for the Nigerian Government.

13. These two wire transfers totaled $8,618,647.00. And between September 08, 2014, and September 23, 2014, Mr. SMITH and/or others moved $6,826,855.52 of the $8,618,647.00 into an account opened under the name "MARTEL 3D" (Savings Account).

14. Over a period of several months in 2014, Mr. SMITH and other parties opened different bank accounts where the funds received were distributed and moved into these accounts. The funds received from the "CLAIMANT THE FRN" were traced to various bank accounts identified in the United States subpoena issued for the seizure of the funds received from the Nigerian Government.

15. Upon the discovery and information that probable cause existed that "DCI" and

its agents were in violation of United States Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, et seq, as "DCI" was not licensed and authorized to engage in the sale, export and import of military weapons. The United States Government issued a warrant with probable cause and seized the funds up to and including the amount of approximately $3,801,034.94 in U.S.Currency seized from Citibank Account Number 206054579 held in the name of Arthur Ave. Consulting, Inc. (The "Arthur Ave. Money Market Funds").

16. Funds up to and including the amount of approximately $21,865.67 in U.S. Currency seized from the Citibank Account Number 205912785 held in the name of Arthur Ave. Consulting,Inc. (The Arthur Ave. Checking Account Funds").

17. Funds of up to the amount of approximately $2,032,022.25 in U.S. Currency seized from Bank of America Account Number 325016557963 held in the name of Martel 3D, LLC. (The "Martel 3D Savings Account Funds").

18. Funds up to and including the amount of approximately $120,883.59 in U.S. Currency seized from Bank of America Account Number 000577161654 held in the name of Martel 3D, LLC. (The "Martel 3D Checking Account Funds and, together with the Arthur Ave. Moneymarket Funds, the Arthur Ave. Checking Account Funds, and Martel 3D Savings Account Funds, together collectively, (the "Defendant Currency").

19. The Defendant Currency was seized on or about February 02, 2015, and is in the custody of the United States Department of Justice, United States Department of Homeland Security, and/or the United States Customs and Border Protection.

20. All the above identified funds currently in the possession of the United States Government are being held in Constructive Trust for the Nigerian Government who has now demanded that the money be released forthwith to "PETITIONER THE FRN."

21. The funds sent by "S.E.I" was for the procurement of weapons on behalf of the Nigerian Government. Furthermore, the "PETITIONER THE FRN" was not

aware that the funds "S.E.I" and it agents were in violation of the laws of the United States Government specifically the "AECA, 22 U.S.C. § 2778, et seq., when the Nigerian Government contracted for the supply and delivery of military weapons for the protection of its borders.

22. The "PETITIONER THE FRN" was no aware that "S.E.I" and "DCI" and it agents were not lawfully registered with the United States Government or other public agencies and lacked the proper registration for the transaction.

23. The "PETITIONER FRN" later discovered "DCI" and its agents did not have a license to engage in the sale and export, import and brokering of military products in violation of 22 U.S.C. § 2778, et seq. "DCI" and its agents failed to disclose to the "PETITIONER THE FRN" that "DEFENDANT DCI" did not have any license to engage in the sale and export of military products.

24. The "PETITIONER THE FRN" was and is a victim of fraudulent conducts by "DEFENDANT DCI" and its agents when "DEFENDANT DCI" misrepresented its status as a licensed and legitimate broker of military weapons at the time the parties entered into the contract for the purchase of the weapons.

25. The "PETITIONER THE FRN" further alleges that "DEFENDANT DCI," is a State of California Licensed Business Entity, and at all times herein mentioned, has done business within the State of California.

26. The "PETITIONER THE FRN" is informed, and based upon such information believes that INDIVIDUAL ARA G. DOLORIAN, (hereinafter "ARA DOLORIAN") is now, and, at all times the president, an agent, an employee, manager, supervisor, of "DOLORIAN CAPITAL INC. - DCI," an acted under the scope and authority, and/or the supervision of the owners and/or management company in regards to the subject transaction that gave rise to this claim.

27. The "PETITIONER THE FRN" is ignorant of the true names and capacities of any and all other parties who may have contributed to, and/or are responsible in some manner for the acts or omissions herein alleged by the "PETITIONER THE

FRN" resulting in the claimant's damages herein alleged were proximately caused by these acts or omissions.

28. The "PETITIONER THE FRN" acted lawfully and in good faith at relevant times when it entered into a contract with "SK-SAWKI" and its agents including "DEFENDANT DCI," for the purchase of the weapons based on the understanding that these parties were legally licensed brokers of military weapons.

29. The "PETITONER THE FRN" is the bona fide owner of the funds in the amount of $8,618,647.00 paid to SK-SAWKI, and its agents "DEFENDANT DCI" that was wired from Nigeria that is now in the possession of the United States Government.

30. At the time the funds were wired to the "SK-SAWKI" and through its agents the "DEFENDANT DCI," the "PETITIONER THE FRN" had the right, title or interest in the funds that was to be used for the purchase of the weapons for the benefits of the Nigerian Government and the people of Nigeria.

31. At the time the funds were transferred to "SK-SAWKI" and its agents the "DEFENDANT DCI," the "PETITIONER THE FRN" reasonably without cause did not believe that the funds would be the subject of any forfeiture proceedings.

32. The "PETITIONER THE FRN" hereby seek to recover the money in the possession of the United States Government that seized from "DCI" and its agents based on the fact that "DEFENDANT DCI" and its agents failed to perform their obligations and deliver the weapons as promised after the parties entered into contract.

33. The "PETITIONER THE FRN" believes that the "SK-SAWKI" and its agents including "DEFENDANT DCI" induced the "PETITIONER THE FRN," and promised to deliver all the weapons at the time the parties signed the contract even though these parties knew it was not a licensed military weapons broker and was not able to perform on the contract.

34. The UNITED STATES OF AMERICA is estopped from asserting a forfeiture of

the funds paid to the "DCI" through "SK-SAWKI" or its agents because there is no evidence to show that the "PETITONER THE FRN" was involved in the criminal acts and violation of any laws by "DEFENDANT DCI" and it agents.

35. The "PETITONER THE FRN" is a victim in that "SK-SAWKI" and its agents including "DEFENDANT DCI" knowingly and with utter disregard for the laws of the United States of America failed to register as a licensed weapons broker in violation of 22 U.S.C. § 2778, et seq.

36. The factual basis for the UNITED STATES OF AMERICA's complaint for forfeiture of the funds is without any basis, vague, ambiguous, and does not allege any wrongdoing on the bona fide owner the "CLAIMANT THE FRN."

37. The UNITED STATES OF AMERICA is estopped from obtaining a forfeiture of the funds because its attempt to deprive Petitioner of any interest in said funds is incorrect, misleading especially as the United States Government is aware of who the true owner of the funds.

38. The UNITED STATES OF AMERICA cannot obtain the forfeiture of the funds it seeks because the result of its actions would be constitutionally disproportionate.

39. Petitioner THE FRN is an innocent third-party with an interest in the Funds because it provided said funds to Defendant in exchange for a military equipment which Defendant claimed he was licensed to supply. Petitioner had no knowledge of the alleged criminal activity of Defendant neither did Petitioner have any clue that Defendant was unlicensed to procure said equipments. Petitioner's interest in the property is superior to the government's interest as a bona purchaser for value without notice of defendant's malfeasance

40. Pursuant to 21 U.S.C. §853(n)(6), Petitioner has a prior vested and/or superior interest in the Property and reserves all of its rights.

41. Petitioner seeks relief from this Court's Preliminary Order and hereby requests that this Court hold a hearing ancillary to the criminal conviction of Defendant Ara Garabed Dolorian at which Petitioner may testify and present evidence and witnesses on

its behalf pursuant to 21 U.S.C § 853(n)(5) and further that this Court amend its Preliminary Order as it is set forth herein.

WHEREFORE, Petitioner prays for the following relief:

1. That the Court amend its Preliminary Order of Forfeiture and enter a Final Order of Forfeiture which exempts the Funds from forfeiture to the extent of the Petitioner's interest therein; and

2. For such relief as the Court deems just and proper.

Dated: June 01, 2023

LAW OFFICES OF JOVI G. USUDE APC

By: /s/ *JOVI G. USUDE*
Jovi G. Usude
Attorneys for Petitioner
FEDERAL Republic of Nigeria

## DECLARATION

I, TAMARANTARE FRANCIS ALI-BOZI, declare:

1. I am the Assistant Director and Head of Asset Recovery and Management at the Federal Ministry of Justice, Nigeria and am authorized to make this declaration on its behalf

2. I have read the foregoing Petition of The Federal republic of Nigeria for an ancillary hearing pursuant to 21 U.S.C.§ 853(n) and know the contents of the Petition to be true and accurate.

In accordance with the requirement of 21 U.S.C. § 853(n)(3), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this day 01st of June 2023 in Van Nuys, California.

By: /s/ Assistant Director/Head Asset Recovery



# EXHIBIT

# A

# EXHIBIT A

a. Approximately $3,801,034.94 seized from Citibank Account Number 206054579, held in the name of Arthur Ave. Consulting, Inc.;

b. Approximately $21,865.67 seized from Citibank Account Number 205912785, held in the name of A11hur Ave. Consulting, Inc.;

c. Approximately $2,031,022.25 seized from Bank of America Account Number 325016557963, held in the name of Martel 3D, LLC;

d. Approximately $120,883.59 seized from Bank of America Account Number 000571161654, held in the name of Martel 3D, LLC; and

e. Approximately $50,000.00 seized from the California Franchise Tax Board, sourced from funds withdrawn from Bank of America Savings Account Number 325016557963, held in the name of Martel 3D, LLC.

## PROOF OF SERVICE BY MAIL

I certify that I am a resident of Los Angeles County, I am over the age of eighteen (18) and not a party to the within action, and that my business address is: 14833 Victory Blvd. Van Nuys, CA 91411

On June 01, 2023, I served the within:

**PETITION OF THE FEDERAL REPUBLIC OF NIGERIA FOR ANCILLARY HEARING TO MODIFY PRELIMINARY ORDER OF FORFEITURE.**

On all interested parties in this proceeding by placing a true and correct copy thereof enclosed in a sealed envelope with postage pre-paid in the United States Mail at Los Angeles, California, addressed as follows:

BENJAMIN B. WAGNER, ESQ.
UNITED STATES ATTORNEY
ASSISTANT UNITED STATES ATTORNEY
UNITED STATES COURTHOUSE
2500 TULARE STREET, SUITE 4401
FRESNO CALIFORNIA 93 721
TEL.: 559-497-4000; 559-497-4099

ROGER D. WILSON, ESQ.
LAW OFFICES OF ROGER D. WILSON
23 77 WEST SHAW A VENUE, SUITE 208
FRESNO CALIFORNIA 93711
TEL.: 559-233-4100; 559-746-7200

JEFFREY A. SPIVAK
Assistant U.S. Attorneys
2500 Tulare Street, Ste 4401
Fresno, CA 93721
(559) 497-4000

I celtify under penalty of perjury that the foregoing is true and correct.

Executed this 1st of June, 2023, at Van Nuys, CA

Claudia Briseno